```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

|                              |                            |
|------------------------------|----------------------------|
| MARK BRYSON,                 |                            |
|            Plaintiff,        | Civil No. 12-499 (JBS-KMW) |
|      v.                      |                            |
|                              | **OPINION**                |
| THE DIOCESE OF CAMDEN, NEW   |                            |
| JERSEY,                      |                            |
|            Defendant.        |                            |

APPEARANCES:

Jeffrey P. Fritz, Esq.
SOLOF & ZERVANOS
457 Haddonfield Road
Suite 540
Cherry Hill, NJ 08002
     Attorney for Plaintiff

William J. DeSantis, Esq.
BALLARD SPAHR LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002
     Attorney for Defendant

**SIMANDLE**, Chief Judge:

**I.   INTRODUCTION**

    This matter is before the Court on a motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), brought by Defendant Diocese of Camden, New Jersey ("Defendant" or "Diocese"). [Docket Item 17.] Plaintiff Bryson's Amended Complaint [Docket Item 14] asserts three counts against Defendant arising from sexual abuse Plaintiff allegedly suffered more than 40 years ago at the hands of Father Joseph Shannon, a priest in

the Diocese: (1) liability under the New Jersey Child Sexual Abuse Act ("CSAA"), N.J. Stat. Ann. § 2A:61B-1 ("Count I"), (2) negligent retention and supervision of Father Shannon and failure to provide a safe environment for Plaintiff ("Count II"), and (3) breach of fiduciary duty by failing to adequately supervise Plaintiff and to warn him of the dangers posed by Father Shannon ("Count III"). [Am. Compl. at 10-14.] Father Shannon is not a defendant in this action.

Defendant moves for dismissal on the grounds that it cannot be liable under the CSAA, because it does not qualify as a passive abuser under state law, and that all of Plaintiff's claims are time-barred. The Court must decide whether Defendant fits the definition of "a person standing in loco parentis within the household" under the CSAA, and whether the relevant statutes of limitations are tolled by the CSAA, the "discovery rule" or by reason of insanity. Because the Court finds that Defendant was not "within the household" for purposes of the statue, the Court will dismiss Count I. The Court further finds that Defendant's motion to dismiss Plaintiff's common law claims must be denied, because Plaintiff has presented a plausible argument for tolling the statute of limitations, which requires a hearing.

**II.  BACKGROUND**

Plaintiff Bryson was born in 1961 and attended St. Anthony

2

of Padua Catholic School ("St. Anthony") in Camden, N.J.[1] [Am. Compl. ¶¶ 5-6.] Father Shannon was an ordained Catholic priest living and working in the Diocese of Camden at St. Anthony, and, when Plaintiff was in the first grade, Father Shannon would care for Plaintiff after school until Plaintiff's mother arrived several hours later. [Id. ¶¶ 6-7.] Plaintiff would stay late at least once a week. [Id. ¶ 7.] Father Shannon counseled Plaintiff on religious matters and visited Plaintiff's home at least once, purportedly to offer counsel and support to Plaintiff and his family. [Id. ¶¶ 8-10.]

One day, Father Shannon took Plaintiff to the basement of St. Anthony, hugged him, removed Plaintiff's pants and "sexually abused [Plaintiff] by fondling his penis, among other things." [Id. ¶ 11.] Father Shannon instructed Plaintiff to keep the incident secret and said that "God wants us to feel good" by engaging in sexual conduct. [Id.] Plaintiff did not mention the incident to anyone. [Id.] Plaintiff asserts that the sexual abuse was repeated every time Father Shannon cared for Plaintiff after school until Plaintiff transferred to public school for the second grade, as well as when Father Shannon disciplined Plaintiff for behavioral misconduct during school. [Id. ¶¶ 11-12.] Plaintiff asserts that he repressed all memories of abuse

---

[1] As this action is before the Court on a motion to dismiss, the Court accepts as true all factual allegations made in the Amended Complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

3

until February 10, 2010, when he "saw an adult male who triggered the memory of a priest." [Id. ¶ 15.]

Nearly two years later, on January 27, 2012, Plaintiff filed his first Complaint [Docket Item 1], which was amended. Defendant filed the present motion to dismiss.

The Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Ohio, Defendant is a New Jersey non-profit corporation with its principal place of business in New Jersey, and the amount in controversy exceeds $75,000. [Am. Compl. ¶¶ 1-3.]

In addition to the facts above, Plaintiff alleges in his Amended Complaint that the Diocese "fraudulently concealed the wrongful acts and omissions by the Diocese that led to [Plaintiff's] abuse . . . ." [Id. ¶ 18.] Plaintiff alleges that the Diocese knew or should have known about Father Shannon's abuse of Plaintiff and other boys, yet continued to place Father Shannon in contact with young boys and affirmatively represented to the public that children were safe around him. [Id. ¶¶ 23-25, 28.] Plaintiff alleges that the Diocese followed a "policy" handed down from the Vatican to keep allegations of sexual abuse secret, to investigate claims internally, and keep all documentation confidential. [Id. ¶¶ 29-30.] Later, Plaintiff claims the National Catholic Conference of Bishops instructed bishops across the country, including the bishop of the Diocese,

4

to destroy all documentation of incidents of abuse. [Id. ¶ 31.] Plaintiff asserts that the Diocese "concealed, altered, or destroyed documents which disclosed the Diocese's knowledge and wrongdoing with regard to Father Shannon." [Id. ¶ 32.]

### III.  Discussion

#### A. Standard of review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in light most favorable to the plaintiff, the court concludes that the plaintiff fails to set forth a claim upon which relief may be granted. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the presumption of truth does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Id. at 663.

Sitting in diversity, the Court must apply the substantive law of the state whose laws govern the action, in this case, New Jersey. See Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1365 (3d Cir. 1993). The state's highest court is the "authoritative source" of state law. Spence v. ESAB Group, Inc. 623 F.3d 212, 216 (3d Cir. 2010). If the state's highest court has not ruled on the issue, the federal court must predict how

5

the state's highest court would resolve the issue, Borman v. Raymark Indus., Inc., 960 F.2d 327, 331 (3d Cir. 1992), and, in those circumstances, intermediate court opinions should be given significant weight. Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991).

**B. Liability under the New Jersey Child Sexual Abuse Act**

Count I of the Amended Complaint alleges that the Diocese "acted as [Plaintiff's] guardian in the place of his parents, and stood in loco parentis to [Plaintiff]." [Am. Compl. ¶ 38.] The Diocese "provided necessary shelter, food, educational instruction, recreational activities, and emotional support to [Plaintiff]." [Id.] Plaintiff alleges that the Diocese "knowingly permitted or acquiesced" to Father Shannon's abuse of Plaintiff, incurring liability under the CSAA. [Id. ¶ 40.]

Defendant argues that it cannot be held liable under the CSAA as a matter of law, because it does not qualify as "a person standing in loco parentis within the household," a requirement for incurring passive liability.[2] [Def. Mot. Br. at 4-5.] Specifically, Defendant argues that it did not function as Plaintiff's parent and was not part of Plaintiff's household. [Id. at 5.] Defendant acknowledges that the Supreme Court of New

---

[2] The CSAA distinguishes, but creates liability for, those who inflict actual sexual abuse on children and those who knowingly permit or acquiesce in sexual abuse. N.J. Stat. Ann. § 2A:61B-1(a)(1).

6

Jersey held a boarding school to be in loco parentis and "within the household" under the CSAA in Hardwicke v. Am. Boychoir Sch., 188 N.J. 69 (2006), but Defendant argues that this case is distinguishable because Plaintiff did not reside at St. Anthony. [Id. at 5.] Instead, Defendant points to New Jersey cases that held or concluded that a day school was not "within the household": D.M. v. River Dell Reg'l High Sch., 862 A.2d 1226 (N.J. Super. Ct. App. Div. 2004), cert. denied, 907 A.2d 1016 (2006); Smith v. Estate of Kelly, 778 A.2d 1162 (N.J. Super. Ct. App. Div. 2001), and Y.G. v. Bd. of Educ. for the Twp. of Teaneck, No. 2124-08, 2011 WL 1466277 (N.J. Super. Ct. App. Div. Apr. 19, 2011). [Id. at 5-6.]

Plaintiff responds that private schools stand in loco parentis of children they undertake to care for and protect. [Pl. Opp'n at 5-6.] Additionally, Plaintiff argues that New Jersey courts read the term "household" expansively, and do not require residence under a single roof. [Id. at 7.] Plaintiff concludes that Defendant is a person standing in loco parentis within the household because it provided Plaintiff with food, shelter, educational instruction, recreational activities and emotional support, as the school did for the plaintiff in Hardwicke. [Id.] Plaintiff notes that an unpublished decision from the District of New Jersey, Nunnery v. Salesian Missions, Inc., No. 07-2091, 2008 WL 1743436 (D.N.J. Apr. 15, 2008), found a private day school to

7

be "within the household" for purposes of the CSAA, and Plaintiff urges the Court to follow that decision. [Id. at 8-9.]

### i. The Child Sexual Abuse Act

The CSAA defines sexual abuse as "an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult." N.J. Stat. Ann. § 2A:61B-1(a)(1). In addition, a "parent, resource family parent, guardian or other person standing in loco parentis within the household who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse," although the statute exempts from liability those who fail to protect the victim because of a reasonable fear of physical or sexual abuse to themselves. Id.

The statute does not define the phrase "within the household" but the Supreme Court of New Jersey has interpreted that language. In Hardwicke, after finding the boarding school qualified as a "person" and stood in loco parentis of the victim, the Supreme Court of New Jersey determined that a boarding school was "within the household" for purposes of the statute. Hardwicke, 902 A.2d at 913-15. The court stated that, under New Jersey law, the term "household" is not a term of art and its meaning "depends on the circumstances of the case and has not been restricted to persons with familial relations," nor does the term include only those residing under the same roof. Id. at 914-15. A household is determined by "the qualities and

characteristics" of the relationship in question. Id. at 915. Applying this definition to the facts, the court determined that

> the School provides food, shelter, educational instruction, recreational activities and emotional support to its full-time boarders - in other words, housing with the amenities characteristic of both a school and a home. We find that 'the qualities and characteristics of the [School-student] relationship,' establish the School as a household under the CSAA.

Id. (citation omitted).

### ii. Analysis

Plaintiff urges the Court to extend the holding of Hardwicke and find a private day school to be "within the household" for purposes of the CSAA, but the Court declines to do so. The Court assumes for the purposes of this analysis that the Diocese is a "person" and stands in loco parentis within the meaning of the statute. See Hardwicke, 902 A.2d at 913 (finding that the boarding school "is a person under the passive abuse provision of the CSAA"), Veronia Sch. Dist. 47J v. Acton, 515 U.S. 646, 655 (1995) ("for many purposes, school authorities ac[t] in loco parentis") (internal quotation marks omitted). However, Defendant does not fit a reasonable definition of "within the household."

"Household" is a flexible term, but it is not infinitely malleable. The Hardwicke court stated that "household" need not imply residency under a single roof or a familial relationship, but all of the cases the court cited in defining the term involved parties that shared at least one of those two

9

characteristics. See Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Switzerland, 170 A.2d 800, 807 (N.J. 1961) (holding, for insurance purposes, that a wife was a resident of her husband's household even though she didn't live under the same roof); Gibson v. Callaghan, 730 A.2d 1278, 1286 (N.J. 1999) (holding, for insurance purposes, that a grandmother and her grandson's wife were part of the same household, when the grandson's wife moved into the grandmother's home in her absence); Miller v. U.S. Fid. & Guar. Co., 316 A.2d 51, 56 (N.J. Super. Ct. App. Div. 1974) (holding that a son was a resident of both his natural mother's and his natural father's households); Resolution Trust Corp. v. Associated Gulf Contractors, Inc., 622 A.2d 1324, 1329-30 (N.J. Super. Ct. App. Div. 1993) (finding a housekeeper qualified as a household member for purposes of legal service of process, when she lived in the home at the time); Borough of Glassboro v. Vallorosi, 568 A.2d 888, 889 (N.J. 1990) (holding ten college students living in the same home qualified as a "family" for zoning purposes), and Storch v. Sauerhoff, 757 A.2d 836, 840-41 (N.J. Super. Ct. Ch. Div. 2000) (finding that, while the plaintiff and defendant did not live under the same roof and were not blood relatives, "the defendant has been a member of the plaintiff's family for the past 30 years" because she married the plaintiff's father, and, for this reason, among others, found the two to be "household members"). If, as

10

Plaintiff argues, neither a single roof nor a familial relationship is required to be "within the household," the Hardwicke decision suggests that a closely analogous, intimate relationship is required.

In Hardwicke, the court found the boarding school to be "within the household" only after noting that the students were "full-time boarders" and depended on the school, in the absence of their parents or other care givers, for "amenities characteristic of . . . a home," including the basic necessities of life, such as food and shelter. Hardwicke, 902 A.2d at 915. For practical purposes, the boarding school was "the household" of the plaintiff victim. Here, Plaintiff resided at all times with his parents, who provided him with home amenities, including food and shelter; he did not reside at the school as the plaintiff did in Hardwicke. Defendant educated and provided religious counseling to Plaintiff through Father Shannon and others, and cared for Plaintiff a few hours per week after school. In doing so, Defendant provided services and amenities normally associated with those of a typical after-school program of a school or a church, not those of a home. Defendant did not function as a parent to Plaintiff in the same way the boarding school did in Hardwicke to the plaintiff in that case. Father Shannon was not a member of the household, nor had he visited Plaintiff's home on more than one occasion. The qualities and

characteristics of the relationship here are not sufficiently strong to establish that Defendant was within the Plaintiff's household.

This result comports with a reasonable reading of the text of the statute. The CSAA was enacted to broaden the class of persons who could be potentially liable, see Hardwicke 902 A.2d at 912 (describing the legislative history of the CSAA and the intent to expand the class of active and passive abusers subject to suit), but the insertion of "within the household" must be read as a limiting factor on passive liability. The legislature could have omitted the phrase and extended potential liability to all persons who stood in loco parentis of the victim. The legislature chose not to do so. The legislature chose also to insert the definite article, "the household," which generally restricts the phrase's meaning to the household which cares for plaintiff, rather than, for instance, an institution or organization of which plaintiff is a member. Here, Defendant provided services and amenities normally associated with school or church, with no residential component, and, without additional facts establishing a relationship more analogous to that of a parent or more evocative of home life, Defendant does not fit a reasonable definition of "within the household."

The New Jersey courts that have considered this question have declined to hold a day school "within the household" for

purposes of the CSAA. In River Dell, the New Jersey Superior Court, Appellate Division ruled that a public day school did not qualify as "in loco parentis within the household," and affirmed dismissal of claims against the school under the CSAA. River Dell, 862 A.2d at 1232 (reversing the trial court's order of summary judgment on other claims and remanding for a hearing to determine the dates of accrual of the plaintiffs' causes of action under applicable statutes). The Appellate Division decided River Dell before the Supreme Court of New Jersey decided Hardwicke, but the state Supreme Court denied certiorari for River Dell six weeks after deciding Hardwicke. See Hardwicke, 902 A.2d at 900 (opinion issued on Aug. 8, 2006), and River Dell, 907 A.2d 1016 (N.J. 2006) (denying certiorari on Sept. 21, 2006). As the Appellate Division later noted in Y.G., if the Supreme Court of New Jersey believed that Hardwicke changed the result in River Dell, "we have no doubt the Court would have at the very least remanded the case for further proceedings consistent with that decision." Y.G., 2011 WL 1466277, at *3.

In Y.G. itself, an unpublished opinion, the Appellate Division held that "a public day school is not a household for purposes of the CSAA." Id. The court reasoned that a day school is not "a parental substitute" in the same way a boarding school is, nor does a day school provide "amenities normally associated with a home environment for its students." Id. Although this

13

opinion is not binding precedent for the purposes of this motion, it is the most recent indication of how the Supreme Court of New Jersey likely would rule on the issue. See also Smith v. Estate of Kelly, 778 A.2d 1162 (N.J. Super. Ct. App. Div. 2001) (finding a Diocese not a household for purposes of the CSAA).

Plaintiff urges the Court to follow Nunnery, an unpublished opinion from this District that held a day school could be considered "within the household." The Court is not persuaded by the one-paragraph reasoning of Nunnery on this question, see Nunnery, 2008 WL 1743436, at *6 (extending Hardwicke and finding the day school fit the statutory definition because it provided shelter, food, instruction, recreation and emotional support to the plaintiff), and this federal Court is to look for guidance on state law issues from the opinions of the New Jersey Supreme Court and the intermediate appellate court, rather than a conflicting opinion of this court.

Therefore, the Court holds, upon the facts pled by Plaintiff, that the Defendant does not fit the definition of "within the household" for purposes of the CSAA, and the Court will grant the motion to dismiss Count I of the Amended Complaint.

### B. Negligence and breach of fiduciary duty

The Amended Complaint, on its face, sufficiently pleads negligence and breach of fiduciary duty causes of action to

survive a motion to dismiss. Defendant, however, argues that the common law claims are barred by the statute of limitations and must be dismissed. Plaintiff and Defendant agree that the causes of actions are subject to a two-year statute of limitations under N.J. Stat. Ann. § 2A:14-2. The parties dispute whether the limitations period was tolled until Feb. 10, 2010, when Plaintiff allegedly recovered his memory of the abuse.

### i. Tolling under the CSAA

Without explanation, Plaintiff asserts that the CSAA's accrual provision tolls the limitations period for the related common law claims. [Pl. Opp'n at 10.] Defendant responds that the common law claims cannot be tolled under the CSAA, citing a footnote in Hardwicke that states "[t]o the extent that the principal opinion below may suggest the liberal tolling provisions of the statute apply to common-law causes of action based on conduct not within the definition of sexual abuse found in the CSAA, we disagree." Hardwicke, 902 A.2d at 919 n.12 (citation omitted). [Def. Mot. Br. at 6.]

Because the definition of passive sexual abuse incorporates "a person standing in loco parentis within the household," and Defendant does not fit that definition, and because the conduct giving rise to the common law causes of action does not otherwise fit the definition of sexual abuse, Hardwicke forecloses Plaintiff's argument, and the statute of limitations cannot be

15

tolled for the common law claims under the CSAA.

### ii. Tolling under New Jersey's discovery rule

Plaintiff claims that he is entitled to the benefit of the so-called "discovery rule," an equitable doctrine which tolls the applicable statute of limitations "until plaintiff knew or had reason to know of the existence" of the wrong suffered. Lopez v. Swyer, 300 A.2d 563, 566 (N.J. 1973). Plaintiff alleges that he fully repressed memories of his abuse ("traumatic amnesia") until February 10, 2010, and that the original Complaint in this action was timely filed, less than two years after the "discovery" of his memories of abuse. [Pl. Opp'n at 10-13.]

Defendant argues that the discovery rule is inappropriate in a repressed memory case. [Def. R. Br. at 11.] Defendant argues that in Jones v. Jones, 576 A.2d 316 (N.J. Super. Ct. App. Div. 1990), the Court considered whether a plaintiff victim of sexual abuse, who repressed awareness of an incestuous relationship with her father, could toll the statute of limitations by reason of "insanity" under N.J. Stat. Ann. § 2A:14-21. Jones, 576 A.2d at 318-19, 321. The Court held that "mental trauma resulting from a pattern of incestuous sexual abuse may constitute insanity under N.J.S.A. 2A:14-21, so as to toll the statute of limitations." Id. at 321. From this, Defendant draws two conclusions. First, tolling statutes of limitations in repressed memory cases should be analyzed under the insanity provision of the statute, not

16

under the discovery rule. [Def. R. Br. at 11.] Second, Defendant argues that Plaintiff does not qualify for the insanity tolling because Plaintiff cannot prove that the "insanity resulted from the defendant's bad acts." Jones, 576 A.2d at 321 (quoting[3] Kyle v. Green Acres at Verona, Inc., 207 A.2d 513, 520 (N.J. 1965)). [Def. R. Br. at 11-12.]

Jones does not suggest that the discovery rule is categorically inapplicable in a repressed memory case; the Jones court considered plaintiff's insanity tolling claim because the plaintiff pled that theory for tolling the limitations period, and the court concluded that mental trauma possibly could constitute insanity for limitations purposes. Jones, 576 A.2d at 321. The Jones court cited the Lopez discovery rule approvingly as a potential means to toll the statute of limitations for another of the plaintiff's claims, and stated that the doctrine "is bottomed on equitable considerations and, hence, the exact contours of the doctrine defy rigid definition. Suffice it to say, the rule has been applied in a variety of factual and legal settings." Jones, 576 A.2d at 322.

More recently, the Appellate Division described the discovery rule approvingly related to sexual abuse cases when the

---

[3] Although Defendant understandably refers to the phrase "defendant's bad acts" in Jones, the Jones court misquoted the relevant passage in Kyle, which refers merely to "the defendant's acts." Compare Kyle, 207 A.2d at 520, with Jones, 576 A.2d at 321. This discrepancy is not material here.

plaintiffs allegedly were unaware of facts giving rise to a school's liability: "If these allegations [that a victim of sexual abuse was unaware of the school's potential liability] are indeed correct . . . discovery rule principles articulated in Lopez v. Swyer [citation omitted] would serve to preserve the remaining plaintiffs' claims. This issue, likewise, requires exploration in a plenary hearing on remand." River Dell, 862 A.2d at 1233.

Lopez itself concerned a medical malpractice case, where an injured patient did not become aware of potential negligence on the part of her doctor until after the statute of limitations had run. Lopez, 300 A.2d at 565. The Supreme Court of New Jersey ruled that determining the applicability of the equitable tolling doctrine was a matter that should be made by a judge at a preliminary hearing outside the presence of the jury. Id. at 567. The judge should take into account the equitable claims on both sides, including damage to the injured party of barring the claim and the burden on defendants of defending an action based on conduct in the distant past. Id.

The Court need not belabor the point. Plaintiff has pled a plausible explanation for his delay in bringing the claim: he had no memory of the sexual abuse that had occurred when he was seven years old until 2010. Based on the flexible, equitable nature of the New Jersey discovery rule, as well as language in the River

Dell case, the Court holds that Plaintiff should be allowed to make an argument for equitable tolling at a preliminary hearing. At that time, Plaintiff may present arguments and evidence that he fully repressed memories of his abuse until February 2010 and that to deny his claim would be inequitable, and Defendant may present arguments and evidence that defending a law suit long after the alleged injury occurred is unjust and outweighs Plaintiff's interest in pursuing his claim against the Diocese. But such a matter needs to be resolved after a hearing, and Plaintiff's claims cannot be dismissed now as a matter of law.[4]

**IV. CONCLUSION**

The Court will grant Defendant's motion to dismiss Count I, but will deny the motion to dismiss Counts II & III; Plaintiff will have the burden of establishing that his remaining claims are timely as a matter of equitable tolling in a preliminary hearing to be commenced when Plaintiff, within 90 days hereof, files a motion for said hearing. Meanwhile, Defendant shall file its answer to Counts II & III of the Amended Complaint within

---

[4] Plaintiff presents alternative arguments for tolling the statute of limitations. Plaintiff argues that the discovery rule should apply because Defendant fraudulently concealed information from Plaintiff that prevented Plaintiff from discovering his abuse earlier. [Pl. Opp'n at 11-12.] Plaintiff also argues that his traumatic amnesia gives rise to insanity tolling under N.J. Stat. Ann. § 2A:14-21. Because Plaintiff's argument of equitable tolling based on his repression of memories is sufficient to defeat Defendant's motion for summary judgment, the Court need not address Plaintiff's alternative arguments.

fourteen (14) days of entry of the accompanying Order. The accompanying Order will be entered.

**November 14, 2012**                   **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                                   Chief U.S. District Judge