IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARK BRYSON,

                    Plaintiff,

          v.

DIOCESE OF CAMDEN, NEW JERSEY,

                    Defendant.

Civil Action
No. 12-499 (JBS-KMW)

**OPINION**

APPEARANCES:

Jeffrey P. Fritz, Esq.
John M. Pumphrey, Esq.
Solof & Zervanos
457 Haddonfield Road
Suite 540
Cherry Hill, NJ 08002
     -and-
Adam Horowitz, Esq.
Herman Law
3351 NW Boca Raton Boulevard
Boca Raton, FL 33431
     Attorneys for Plaintiff

William J. DeSantis, Esq.
Ballard Spahr LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002
     Attorney for Defendant

**SIMANDLE,** Chief Judge:

I.    **INTRODUCTION**

     This matter comes before the Court on the motions of

Defendant Diocese of Camden ("Diocese") for summary judgment and

to strike Plaintiff's proposed expert testimony [Docket Item 77]. The Court heard oral argument on June 20, 2013.

Defendant's motion to strike Plaintiff's proposed expert testimony will be denied because Plaintiff's use of this proposed expert comports with Fed. R. Evid. 702. The Court does find, however, that Defendant was prejudiced by Plaintiff's decision to furnish a second, untimely expert report. In order to cure this prejudice, the Court will allow Defendant time to depose Plaintiff's expert, require that the deposition take place within the Camden vicinage, and require Plaintiff to pay the expert's travel expenses for the deposition, with Defendant continuing to bear a reasonable expert's fee for deposition testimony time.

Defendant's motion for summary judgment will be denied. The Court must hold a <u>Lopez</u> hearing and weigh the evidence of prejudice against the Defendant with the other factors that courts must consider in determining whether equitable tolling is proper.

## II.  BACKGROUND

Plaintiff, who was born in 1961, alleges that Father Joseph Shannon, a priest in the Defendant Diocese of Camden ("Diocese"), sexually molested him when Plaintiff was in the first grade. Plaintiff alleges negligence and breach of

fiduciary duty claims.[1] Defendant filed a motion to dismiss
[Docket Item 17] arguing, <u>inter alia</u>, that the statute of
limitations bars Plaintiff's claims because the abuse occurred
over 40 years ago. In response, Plaintiff argued that he
suffered traumatic amnesia, repressed memories of the abuse
until 2010 and, therefore, is entitled to New Jersey's discovery
rule, an equitable doctrine that tolls the applicable statute of
limitations until Plaintiff knew of the wrong suffered.

In an Opinion and Order [Docket Items 27 & 28] addressing
Defendant's motion to dismiss, the Court ordered a preliminary
hearing to determine the applicability of the equitable tolling
doctrine. At this hearing, "Plaintiff will have the burden of
establishing that his remaining claims are timely as a matter of
equitable tolling. . . ." <u>Bryson v. Diocese of Camden, N.J.</u>, 909
F. Supp. 2d 364, at 373 (D.N.J. 2012) ("<u>Bryson I</u>"). The Court
further explained that

> Plaintiff may present arguments and evidence that he
> fully repressed memories of his abuse until February
> 2010 and that to deny his claim would be inequitable,
> and Defendant may present arguments and evidence that
> defending a law suit long after the alleged injury is
> unjust and outweighs Plaintiff's interest in pursuing
> his claim against the Diocese.

<u>Id.</u>

---

[1] Plaintiff also alleged violation of the New Jersey Child Sexual
Abuse Act, but the Court dismissed this claim. <u>Bryson v. Diocese
of Camden, N.J.</u>, 909 F. Supp. 2d 364 (D.N.J. 2012).

After the Court issued <u>Bryson I</u>, the parties conducted discovery regarding equitable tolling and then Defendant filed the motions presently before the Court.

## III. DEFENDANT'S MOTION TO STRIKE EXPERT TESTIMONY

### a. Parties' Arguments

Defendant argues that the testimony of Plaintiff's expert witness, Dr. Mary Gail Frawley-O'Dea, should be barred on the issue of whether Plaintiff repressed his memories and recovered them in 2010. Defendant claims that the expert report is inadequate under Fed. R. Civ. P. 26. The Diocese argues that the expert did not properly disclose her qualifications and experience. Defendant notes that Dr. Frawley-O'Dea offers no explanation of how and why she reached the conclusion that Plaintiff repressed his memories and does not express her opinions to a reasonable degree of medical or psychological probability.

Defendant also argues that the expert does not meet the requirements of Fed. R. Evid. 702 and does not satisfy <u>Daubert</u> standards because she is not qualified on the issue of memory repression; her application of repressed memory theory to Plaintiff is unreliable; she does not rule out alternative explanations of memory loss; she lacks sound methodology and scientific procedures for her assertion that Plaintiff repressed

his memory; and her report and expertise are an improper fit on the memory repression issue. Defendant also argues that the Court should not consider an affidavit that Plaintiff's expert wrote describing various theories of memory loss.

In Opposition [Docket Item 85], Plaintiff argues that Dr. Frawley-O'Dea's disclosure of her qualifications is sufficient; a psychological expert opinion regarding memory need not be expressed to a reasonable degree of medical or psychological certainty; the expert testimony is reliable and supported by facts and reason; the expert need not rule out Defendant's experts' explanations for lost memory; and her opinions satisfy the fit requirement.

Plaintiff also produced a second expert report, attached to the Opposition, which explains her methodology and bolsters her first report. Plaintiff asserts that he is entitled to produce this report even though discovery has concluded because it "further explains and clarifies her report." (Pl. Opp'n at 10.) Plaintiff asserts that this second report "does not 'ambush' Defendant with new or different opinions, nor does it unfairly prejudice Defendant, especially since the *Lopez* hearing is not presently scheduled." (Pl. Opp'n at 10 n.8.) Plaintiff also argues that the second report constitutes a rebuttal report filed in response to Defendant's experts.

In Reply [Docket Item 90], Defendant argues that Plaintiff's second expert report should be stricken because it was produced after discovery concluded, was provided to Defendant for the first time as an attachment to the Opposition brief, and neither discusses nor rebuts Defendants' experts' reports. Moreover, Defendant argues that all of the opinions in the second report could have been included in the first report. Defendant argues that the late disclosure is neither substantially justified nor harmless. Defendant also asserts that the second report does not cure the deficiencies found in the first report, does not contain a differential diagnosis explaining the cause of Plaintiff's inability to recall the abuse at an earlier time, and does not provide an error rate for the expert's analysis.

### b. Plaintiff's Expert Reports

#### i.  *Plaintiff's Expert's First Report*

Plaintiff submitted an expert report from Mary Gail Frawley-O'Dea, Ph.D. (Docket Item 77-11, Def. Mot. Summ. J., Ex. H.) Dr. Frawley-O'Dea states that Plaintiff's counsel retained her "to provide a clinical evaluation of Mark Bryson, . . . to evaluate his general psychological functioning and to comment, to the extent possible, on the sequelae of the sexual abuse and its likely impact on his functioning." (Def. Ex. H at 1.) Dr.

Frawley-O'Dea has worked clinically with adult survivors of sexual abuse since 1984, has published books and lectured widely on this topic, and has served as an expert witness in sexual abuse cases. (Def. Ex. H. at 1.) She interviewed and evaluated Plaintiff on February 15-16, 2013. She used a variety of psychometric instruments in her evaluation, including the Beck Depression Inventory, Beck Anxiety Inventory, Multiscale Dissociation Inventory, Wechsler Adult Intelligence Inventory-IV, Rorschach Test, Thematic Apperception Test, Alcohol Use Disorders Identification Test, and Drug Abuse Screening Test.

Her report describes Plaintiff's presentation and behavior; his feelings about this lawsuit; and his psychosocial history, including descriptions of his family members, romantic relationships, school and work history, physical condition, spiritual life, hobbies, and history of psychotherapy.

The report recounts Plaintiff's abuse narrative and describes the circumstances in which Plaintiff recovered his memories. In February 2010, Plaintiff was living in Florida and his wife accessed a website listing sex offenders living in their police district. One offender lived on their street, often wore black, and resembled a priest. When Plaintiff realized this neighbor was a sexual offender, "the memories of abuse by Shannon flooded back in . . . ." (Def. Ex. H. at 11.) Plaintiff

cried and wailed. Dr. Frawley-O'Dea states, "This is typical of the way in which dissociated traumatic memories are often recalled . . . . In Mark's case, I had no sense that his memories pre-dated his report of them returning in 2010." (Def. Ex. H. at 11.) The report states,

> Mark apparently dissociated from memory his experiences with Fr. Shannon . . . . It is not unusual for sexual abuse victims to dissociate those experiences, having amnesia for the memories until some environmental cue triggers them into consciousness; there are now neuroscientific models that depict the encoding and retrieval of dissociated traumatic memories.

(Def. Ex. H at 11.) Although Dr. Frawley-O'Dea notes the existence of neuroscientific models that depict the encoding and retrieval of dissociated traumatic memories, she does not discuss whether she applied these models to Plaintiff's description of his repressed memories in her first expert report. Essentially, in support of the memory repression theory, the first expert report asserts that Plaintiff "apparently dissociated" from his memories of the abuse, that such a reaction is "not unusual," and that Dr. Frawley-O'Dea "had no sense that [Bryson's] memories pre-dated his report of them returning in 2010."

The report concludes with a psychological evaluation of Plaintiff and a series of recommendations for Plaintiff to

address his various psychological, family, physical, and
employment problems.

### ii. *Plaintiff's Expert's Affidavit*

Plaintiff's expert also produced an affidavit titled
"Memory Systems & Delayed Recall of Trauma." (Docket Item 77-18,
Def. Mot. Summ. J. Ex. O.)[2] The affidavit's purposes are to "A.
Distinguish two different memory systems affecting ways in which
experiences are stored and recalled. B. Discuss Traumatic
Amnesia. C. Present reasons for which trauma survivors often do
not disclose their experiences for years post-events." (Def. Ex.
O at 1.) The affidavit discusses general concepts relating to
memory and sexual abuse, but it does not discuss Plaintiff
specifically.

### iii. *Plaintiff's Expert's Second Report*

Plaintiff attached a second report from Dr. Frawley-O'Dea
to his Opposition, after discovery for the Lopez hearing had
concluded. (Docket Item 86-4, Pl. Opp'n Ex. 4.) This second
report is titled "Comments on Evaluation of Mark Bryson & On The
Phenomenon of Delayed Recall of Traumatic Memories." This report
identifies six factors comprising the processes of dissociation
and notes that Plaintiff scored positive for three of the

---

[2] Defendant noted that this affidavit did not contain a jurat.
Plaintiff attached a copy of this affidavit with a jurat to his
Opposition. (Docket Item 86-3, Pl. Ex. 3.)

factors: disengagement, depersonalization, and memory disturbance. The report asserts that "Bryson's scores on the [Multiscale Dissociation Inventory] therefore supported the diagnosis of PTSD and of the presence of dissociation that negatively affects his memory." (Pl. Ex. 4 at 4.)

Dr. Frawley-O'Dea also states, "Mr. Bryson's description of the way in which his abuse memories were triggered, began to return, and still emerge is not unusual among adult survivors of childhood sexual abuse." (Pl. Ex. 4 at 4.) She also asserts that "[i]n my own practice working clinically with and supervising others' clinical work with over 1,000 sexual abuse survivors over thirty years, I have encountered many individuals who were amnesiac for their traumatic events until some life event began to trigger delayed recall." (Pl. Ex. 4 at 5.)

She cites various studies supporting memory repression. For example, one study found that, out of 77 survivors of child sexual abuse, "16% claimed a period of complete amnesia followed by delayed recall." (Pl. Ex. 4 at 5.)

Plaintiff's expert concludes:

I was not a witness to the events described by Mark Bryson and cannot declare with certainty that they occurred and that he is a victim of sexual abuse by this priest. I can, however, say with certainty that Mark Bryson's description of the way in which he began to recall the memories of the alleged abuse is consistent with what empirical studies of memory, neurobiologically based constructions of memory, and

my own clinical experience conclude about sexual abuse
survivors . . . . Mark Bryson's amnesia and delayed
recall are consistent with the amnesia for and delayed
recall of many other sexual abuse survivors. There is
no compelling reason to **DIS**believe his reports. In
addition, he meets empirically validated criteria for
dissociation correlated with a trauma history and with
PTSD symptom clusters, and he meets DSM-IV criteria
for PTSD.

(Pl. Ex. 4 at 6.) In essence, the second report bolsters the

first report's conclusions with references to studies, the

Multiscale Dissociation Inventory, the six factors comprising

the processes of dissociation, and Dr. Frawley-O'Dea's clinical

experience.

### c. Analysis

#### i. Prejudice to Defendant

Dr. Frawley-O'Dea's second report was produced on June 4,

2013, as an attachment to Plaintiff's opposition, well past the

deadline for Plaintiff to produce expert reports for the <u>Lopez</u>

hearing. On February 21, 2013, Magistrate Judge Karen M.

Williams entered an Amended Scheduling Order [Docket Item 54]

mandating that "all expert reports . . . on behalf of plaintiff

for purposes of the *Lopez* hearing shall be served upon counsel

for defendant not later than **February 26, 2013.**" [Docket Item 54

¶ 3.] This Amended Scheduling Order emphasized the significance

of the discovery deadline: "No expert opinion testimony shall be

admitted at the *Lopez* hearing with respect to any witness for

whom this procedure has not been timely followed." [Id.][3] The second expert report therefore should have been produced by February 26, 2013. It is not a rebuttal report responding to Defendants' experts' reports because it does not discuss their reports. It is also not a mere supplementation or clarification of the first report; the second report provides substantial empirical support for Dr. Frawley-O'Dea's conclusions, support which was lacking in the first report.

Plaintiff's late production of the second report has prejudiced the Defendant. Defendant's counsel asserted at oral argument that Defendant's motion in limine was based on the quality of the existing disclosures at the conclusion of discovery and, if Plaintiff had filed the second expert report in a timely fashion, Defendant might not have filed the motion in limine and might have elected to depose Dr. Frawley-O'Dea.

Despite the late production, the Court will not exclude Dr. Frawley-O'Dea's second report and will, instead, specify certain measures to cure any prejudice to Defendant. Before excluding evidence for failure to comply with discovery obligations, the Court must consider:

---

[3] On March 5, 2013, Judge Williams entered a Consent Order Concerning Discovery [Docket Item 61] mandating that expert witnesses must exchange raw data from tests administered during their examinations of Plaintiff within five days of the Consent Order's entry. This Consent Order did not impact the timeline for production of expert reports for the Lopez hearing.

> (1) the prejudice or surprise of the party against
> whom the excluded evidence would have been admitted;
> (2) the ability of the party to cure that prejudice;
> (3) the extent to which allowing the evidence would
> disrupt the orderly and efficient trial of the case or
> other cases in the court; and (4) bad faith or
> willfulness in failing to comply with a court order or
> discovery obligation.

Nicholas v. Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000). The production of the second report will not disrupt either a trial or the Lopez hearing, since neither has been scheduled. Moreover, the prejudice to Defendant can be cured.

At oral argument, Defendant's counsel requested, if the Court does not strike the second report, the opportunity to depose Dr. Frawley-O'Dea. Defendant also asked the Court to order the deposition to be in the Camden vicinage and to require Plaintiff to pay Dr. Frawley-O'Dea's travel expenses and fees. The Court will not strike the second expert report, but it will grant the remainder of Defendant's requests. Plaintiff shall produce Dr. Frawley-O'Dea for deposition within the Camden vicinage of the District of New Jersey at a mutually agreeable date for all counsel within thirty days of the entry of this Opinion and the accompanying Order. Plaintiff shall pay Dr. Frawley-O'Dea's travel expenses and travel time, in order to expedite the deposition that Plaintiff's failure to comply with the Scheduling Order has caused. Defendant will bear the cost of the expert's time in the deposition pursuant to Rule 26(b)(4)(A)

& (E)(i), since Defendant would have borne these costs if it had elected to depose the expert anyway.

The Court will now turn to Defendant's motion in limine and, in adjudicating this motion, will consider both of Dr. Frawley-O'Dea's reports.

### ii. Defendant's Motion in Limine Will Be Denied

The Court will deny Defendant's motion in limine. Dr. Frawley-O'Dea's testimony is subject to the Federal Rules of Evidence, which mandate that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

This Rule has been distilled into "a trilogy of restrictions on expert testimony: qualification, reliability, and fit." Schneider ex. rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted). Qualification refers to the requirement that the witness possess specialized expertise. The Third Circuit has "interpreted the specialized knowledge requirement liberally, and ha[s] stated that this policy of liberal admissibility of expert testimony extends to

the substantive as well as the formal qualification of experts."
Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (citing In re
Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)).

Reliability means that the expert's testimony must be based
on the "methods and procedures of science" rather than on
"subjective belief or unsupported speculation," and "[p]roposed
testimony must be supported by appropriate validation . . . ."
Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590
(1993). The fit requirement "goes primarily to relevance" by
"requir[ing] a valid scientific connection to the pertinent
inquiry as a precondition to admissibility." Id. at 591-92.

The issue before the Court at a Lopez hearing is whether
Plaintiff is entitled to equitable tolling of the statute of
limitations based on memory repression; the expert testimony
must therefore "fit" the issue of memory repression.

Defendant argues that Dr. Frawley-O'Dea is not qualified to
serve as an expert on the specific topic of memory repression.
The Court finds, however, that Dr. Frawley-O'Dea meets the
qualification standards in the Third Circuit. According to her
resume, Dr. Frawley-O'Dea has master's and doctorate degrees in
clinical psychology and a certificate in psychoanalysis and
psychoanalytic psychotherapy. (Docket Item 77-19, Def. Mot.
Summ. J. Ex. P at 1.) She has numerous publications about sexual

15

abuse within the Catholic Church, treating adult survivors of sexual abuse, and memory. (Id. at 5-10.) She has served as an expert witness in many sexual abuse cases. (Id. at 15-16.) And she has worked clinically with and supervised others' clinical work with over 1,000 sexual abuse survivors. (Pl. Ex. 4 at 5.) She also has publications relating to memory specifically: book chapters entitled "Society, politics, psychotherapy and the search for 'truth' in the memory debate" and "$p^3$: patients, politics, and psychotherapy in the true/false memory." (Def. Ex. P at 6.)

Defendant also argues that Dr. Frawley-O'Dea's opinions are not reliable. Without rendering an opinion on the ultimate issues that will be decided at the Lopez hearing, the Court does find that Dr. Frawley-O'Dea's opinions are sufficiently reliable to satisfy the Court's gatekeeping role. Her second report states that Plaintiff "meets empirically validated criteria for dissociation correlated with a trauma history and with PTSD symptom clusters, and he meets DSM-IV criteria for PTSD." (Pl. Ex. 4 at 6.) She writes that she can "say with certainty that Mark Bryson's description of the way in which he began to recall the memories of the alleged abuse is consistent with what empirical studies of memory, neurobiologically based constructions of memory, and my own clinical experience conclude

16

about sexual abuse survivors." (Id.) Her opinions are thus based upon clinical tests that she conducted on Plaintiff, empirical studies, and her own extensive clinical experience. Defendant may choose to rebut her testimony at the Lopez hearing with other expert witness testimony, but her reports satisfy the reliability requirements of Fed. R. Evid. 702.

Her opinions also satisfy the fit requirement in that her reports discuss, inter alia, Plaintiff's claims of memory repression and recovery and the ways in which those claims are consistent with her clinical experience and empirical studies.

Defendant's motion in limine will be denied because Dr. Frawley-O'Dea and her reports, considered in tandem, satisfy the qualification, reliability, and fit requirements.

### iii. Further Challenges to Expert Testimony Shall Be Presented At the Lopez Hearing

Both parties have expressed intentions to file more motions before the Court holds the Lopez hearing. In its briefing, Defendant indicated future plans to challenge the scientific validity of memory repression theory by "reserve[ing] its right to raise the issue of the general reliability of the hypothesis of repressed memory" and noting that Plaintiff's expert failed to rule out alternative explanations for Plaintiff's failure to raise the abuse earlier, such as forgetfulness, false memory, or allegations that are not credible. (Def. Br. at 14.) In

addition, at oral argument, Plaintiff's counsel indicated that
he planned to file motions in limine against Defendants'
experts.

In the November 14, 2012 Order accompanying Bryson I, the
Court ordered Plaintiff to file his motion for a Lopez hearing
within 90 days. Eight months have passed and the parties still
have not filed Lopez briefing. There will be no more preliminary
motions before the Lopez hearing, which is, in itself, a
preliminary procedure. Any evidentiary objections shall be
raised at the Lopez hearing, which shall take place on October
15-16, 2013, provided that such issues are first identified and
addressed in the parties' respective Lopez hearing briefs.

## IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### a. Parties' Arguments

Defendant argues that Plaintiff must have an expert witness
to make a claim for equitable tolling based on repressed memory
and that, if the Court strikes Plaintiff's expert's testimony,
the case should be dismissed.[4] Because Defendant's motion in

---

[4] Defendant is correct that the Lopez hearing must include expert
testimony on memory repression. The New Jersey Supreme Court has
explained that "a plaintiff's testimony about forgetfulness,
standing alone, cannot supply the justification for an asserted
inability to have discovered the injury and timely filed the
action." Phillips v. Gelpke, 190 N.J. 580, 583 (2007). The New
Jersey Supreme Court explained its reasoning:

> in order to justify the tolling of a statute of
> limitations, plaintiffs must explain why they

limine has been denied and Plaintiff will be able to present Dr. Frawley-O'Dea's testimony at the <u>Lopez</u> hearing, the Court need not address this argument further.

The Diocese also argues that summary judgment is warranted because of prejudice. Defendant claims prejudice because of the 40-year delay since the alleged abuse; missing medical, educational, and employment records about Plaintiff; Plaintiff's destruction, after this litigation commenced, of a 200-page journal he had written discussing the abuse; faded memories of potential witnesses, including Plaintiff; and unavailability of key witnesses, including the nun who first told Fr. Shannon to take care of Plaintiff, two boys who allegedly witnessed Fr. Shannon engaged in sexual acts with Plaintiff, and Fr. Shannon's supervising pastor. The Diocese also argues that summary judgment is appropriate because of laches.

In opposition, Plaintiff contends that summary judgment is improper. Plaintiff argues that "Defendant has not uncovered a single document or witness that even remotely indicates that

---

reasonably could not have discovered their cause of action in time to comply with the limitation period . . . . In childhood sexual assault cases, that standard is not met by an "I forgot" explanation, which is why an expert is needed. To explain the delay in filing, such a plaintiff also must describe why the memory could not have been recalled, or discovered, in time to file the claim timely.
<u>Id.</u> at 595 (citations omitted).

Plaintiff had any memory of being sexually abused prior to February, 2010." (Pl. Opp'n at 19.) Plaintiff also asserts that Defendant distorts purported inconsistencies in the record regarding Plaintiff's testimony; Defendant's claims of unavailable witnesses and documents are speculative and do not constitute unusual prejudice; the appropriate comparison should be to the witnesses and documents that would have been available when Plaintiff reached the age of majority, not when the abuse occurred; and Plaintiff's destruction of his journal does not constitute spoliation of evidence. In essence, Plaintiff argues that there are material issues of disputed fact regarding the issues involved in the Lopez analysis.

In its Reply, Defendant argues that it can establish prejudice without specifying what deceased witnesses and lost documents would have said.

### b. Standard of Review

Summary judgment is appropriate when the materials of record "show[] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.

### c. The Court Must Conduct a **Lopez** Hearing

Plaintiff asserts that the alleged abuse occurred in the 1960s, over forty years before he filed this action. The statute of limitations will undoubtedly bar his claim if tolling does not apply.[5] The discovery rule "provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Lopez v. Swyer, 62 N.J. 267, 272 (1973).

The Court determines whether equitable tolling applies: "whenever a plaintiff claims a right to relief from the bar of the statute of limitations by virtue of the so-called 'discovery' rule, the question as to whether such relief is

---

[5] In Opposition to Defendant's motion to dismiss, Plaintiff presented several arguments for tolling the statute of limitations: In addition to his memory repression argument, he argued that the discovery rule should apply because Defendant fraudulently concealed information that prevented Plaintiff from discovering the abuse earlier and that his traumatic amnesia gave rise to insanity tolling. Bryson I, 2012 WL 5511720 at *8 n.4. In Bryson I, the Court did not address Plaintiff's arguments regarding fraudulent concealment and insanity tolling because lack of discovery due to memory repression would be sufficient to defeat the statute of limitations bar. The discovery and briefing thus far in the case have focused on the memory repression basis for equitable tolling.

properly available shall be deemed an issue for determination by
the court rather than by the jury." Id. At this hearing, "[t]he
issue will be whether or not [plaintiff] is equitably entitled
to the benefit of the discovery rule." Id. at 275.

At this hearing, the determinative factors may include but
need not be limited to: "the nature of the alleged injury, the
availability of witnesses and written evidence, the length of
time that has elapsed since the alleged wrongdoing, whether the
delay has been to any extent deliberate or intentional, [and]
whether the delay may be said to have peculiarly or unusually
prejudiced the defendant." Id. at 276.

Prejudice to defendants is one of the factors for
consideration because "[i]t may . . . be unjust . . . to compel
a person to defend a law suit long after the alleged injury has
occurred, when memories have faded, witnesses have died and
evidence has been lost." Id. at 274. The Lopez court explained
that "statutes of limitations are statutes of repose and the
principal consideration underlying their enactment is one of
fairness to the defendant." Id.

The Court must hold at a preliminary hearing because
"[g]enerally the issue will not be resolved on affidavits or
depositions since demeanor may be an important factor where
credibility is significant." Id. at 275. The Lopez court

recognized the importance of demeanor and credibility. In this case, the Court must assess the credibility of Plaintiff's assertions that he did not recover his memories until 2010. The Court must also assess the extent of prejudice to Defendant, which depends in part on the credibility of Plaintiff's memories and the memories of other living witnesses.

In its motion, Defendant highlights inconsistencies in Plaintiff's testimony. For example, Plaintiff claimed, during his deposition, that the first incident of abuse occurred in the school's basement. [Docket Item 77-4, Pl. Dep. 25:14-26:13.] But Defendant notes that the school has no basement. [Docket Item 77-10 at 7, ¶ 11(a).] Plaintiff argues that he later clarified, in his statements to Dr. Frawley-O'Dea, that the first instance of abuse occurred in the basement of a different building. In order to determine whether Plaintiff is a credible witness and whether the passage of time has unduly prejudiced Defendant, the Court must evaluate the demeanor of Plaintiff and other witnesses as well as the importance of any inconsistencies. These credibility determinations will be essential to the Court's ruling on equitable tolling.

Given the length of time between the alleged abuse and the initiation of this lawsuit, Defendant has likely experienced prejudice. Whether Defendant has been prejudiced is not,

however, the sole factor that the Court must consider. The Court
must weigh the extent and nature of Defendant's prejudice with
other factors, such Plaintiff's proffered reason for the delay,
Plaintiff's credibility, and the availability of witnesses. The
Court can only determine whether Plaintiff is entitled to
equitable tolling or whether the statute of limitations bars
this action after conducting a complete <u>Lopez</u> analysis.
Defendant argues that the prejudice would preclude equitable
tolling in all circumstances, but the Court cannot hold, as a
matter of law, that the prejudice to Defendant automatically
obviates the necessity of conducting a <u>Lopez</u> hearing.

In its Motion to Dismiss, Defendant tried to dismiss this
action on the grounds that it was barred by the statute of
limitations. The Court held, in <u>Bryson I</u>, that it must conduct a
<u>Lopez</u> hearing to determine whether the statute of limitations is
equitably tolled. Defendant now seeks summary judgment on the
grounds that it is prejudiced by the passage of time since
Plaintiff's cause of action accrued. The Court reiterates its
determination in <u>Bryson I</u>: the Court must hold a <u>Lopez</u> hearing
to determine whether equitable tolling applies or whether the
statute of limitations bars this action.

The Court must also hold a <u>Lopez</u> hearing before determining
whether laches supports dismissal of this action because

Defendant's laches arguments involve the same issues, <u>i.e.</u> prejudice to Defendant and Plaintiff's reasons for the delay in filing this lawsuit, which must be resolved at the <u>Lopez</u> hearing.

Accordingly, Defendant's motion for summary judgment is denied.


**V.    CONCLUSION**

Defendant's motions to strike expert testimony and for summary judgment are denied.

Defendant shall depose Dr. Frawley-O'Dea within 30 days of the entry of the accompanying Order and pursuant to the terms enumerated in that Order. Plaintiff shall file his motion for a <u>Lopez</u> hearing within thirty days of the entry of the accompanying Order. Defendant shall file its Opposition within fifteen days of Plaintiff's filing his motion, and Plaintiff shall file his reply within seven days of Defendant filing its opposition. The <u>Lopez</u> hearing will take place on October 15-16, 2013. Any further evidentiary challenges shall be raised at the hearing, provided that either party has first identified and addressed the evidentiary issue in its <u>Lopez</u> hearing brief.

| **July 26, 2013** | **s/ Jerome B. Simandle** |
|---|---|
| Date | JEROME B. SIMANDLE |
|  | Chief U.S. District Judge |